IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK JULIAN EDMONDS,　　　　§
　　　　　　　　　　　　　　　　§
　　　　　　Movant,　　　　　　　§
　　　　　　　　　　　　　　　　§
V.　　　　　　　　　　　　　　　§　　　　No. 3:16-cv-1835-S-BN
　　　　　　　　　　　　　　　　§
UNITED STATES OF AMERICA,　　§
　　　　　　　　　　　　　　　　§
　　　　　　Respondent.　　　　　§

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Movant Mark Julian Edmonds, a federal prisoner, now represented by the
Federal Public Defender for this district (the "FPD"), *see* Dkt. No. 34, obtained
authorization from the United States Court of Appeals for the Fifth Circuit, *see* Dkt.
No. 1, to file a successive motion to vacate, set aside, or correct sentence under 28
U.S.C. § 2255, *see* Dkt. Nos. 2, 4, & 5. This resulting action has been referred to the
undersigned United States magistrate judge for pretrial management under 28 U.S.C.
§ 636(b) and a standing order of reference from United States District Judge Karen
Gren Scholer. *Cf.* Dkt. No. 44. The undersigned enters these findings of fact,
conclusions of law, and recommendation that the Court should dismiss the successive
Section 2255 motion under 28 U.S.C. § 2244(b)(4).

**Applicable Background**

In 2000, a jury convicted Edmonds of unlawfully receiving ammunition, in
violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and now-retired United States District
Judge Robert B. Maloney sentenced Edmonds to 327 months of imprisonment. *See*

*United States v. Edmonds*, No. 3:98-cr-370-M (N.D. Tex.) (the "Crim. Case"), *aff'd*, 252 F.3d 434, 2001 WL 360663 (5th Cir. Mar. 31, 2001) (per curiam), *cert. denied*, 534 U.S. 870 (2001); *see* Crim. Case, Dkt. No. 232 (sentencing tr.) at 15:10-18 ("The Court has listened to the defendant, never heard one word of remorse, no indication that the defendant has any intention of reforming. Considering his criminal record the Court believes that the day that Mr. Edmonds is released from confinement will be a date in which the citizens of the Northern District of Texas or any other district to which he is released will become very unsafe; therefore, the Court has sentenced the defendant at the high end of the guideline range.").

More than once, Edmonds has unsuccessfully moved for relief under Section 2255.

And, in 2016, a panel of the Fifth Circuit preliminarily authorized Edmonds's filing this successive Section 2255 motion based on *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015), "which struck down the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague," Dkt. No. 1; *In re Edmonds*, No. 16-10673 (5th Cir. June 27, 2016) (per curiam).

The government has moved to dismiss the successive Section 2255 motion, arguing that the claims that Edmonds raises are not authorized (and therefore this Court lacks jurisdiction), *see* 28 U.S.C. § 2255(h)(2), and, even if there is jurisdiction, the motion is meritless because, for among other reasons, second-degree burglary in violation of New York Penal Law § 140.25(2) – the statute providing the predicate convictions supporting Edmonds's Section 924(e)(1) conviction – constitutes generic

burglary. Thus, the government argues, *Samuel Johnson* has no bearing on Edmonds's claims because that "decision does not call into question application of the [ACCA] to the four enumerated offenses[ – burglary, arson, extortion, or one that involves use of explosives – ]or the remainder of the [ACCA's] definition of a violent felony." *Samuel Johnson*, 135 S. Ct. at 2563.

The Court, under 18 U.S.C. § 3006A(a)(1) and (c) and its discretion, appointed the FPD to represent Edmonds in this action, *see* Dkt. No. 34, and then ordered the parties to submit additional briefing on the jurisdictional issues, *see id.* Edmonds, through the FPD, filed a brief, *see* Dkt. No. 42, and the government filed a brief in response, *see* Dkt. No. 45; *see also* Dkt. Nos. 46 & 47.

## Legal Standards

I.    *Samuel Johnson*'s Impact.

As the United States Supreme Court recounted in *Samuel Johnson*,

[f]ederal law forbids certain people – such as convicted felons, persons committed to mental institutions, and drug users – to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," the [ACCA] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1); *[Curtis] Johnson v. United States*, 559 U.S. 133, 136 (2010). The Act defines "violent felony" as follows:
> "any crime punishable by imprisonment for a term exceeding one year ... that –
> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> "(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." § 924(e)(2)(B) (emphasis added).

The closing words of this definition, italicized above, have come to be

known as the Act's residual clause.

135 S. Ct. at 2555-56.

In *Samuel Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* at 2563. That decision thus "affected the reach of the [ACCA] rather than the judicial procedures by which the statute is applied" and therefore is "a substantive decision and so has retroactive effect under *Teague[ v. Lane*, 489 U.S. 288 (1989),] in cases on collateral review," *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). But that "decision [did] not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Samuel Johnson*, 135 S. Ct. at 2563.

Therefore, after *Samuel Johnson*, "[a] violent felony is one of a number of enumerated offenses or a felony that 'has an element the use, attempted use, or threatened use of physical force against the person of another.'" *United States v. Moore*, 711 F. App'x 757, 759 (5th Cir. 2017) (per curiam) (quoting 18 U.S.C. § 924(e)(2)(B)); *see, e.g.*, *United States v. Lerma*, 877 F.3d 628, 630 (5th Cir. 2017) ("The government concedes that Lerma's sentence could not have constitutionally rested upon the residual clause in light of *[Samuel] Johnson* and *Welch*" and that "Lerma's prior convictions were not for any of the four enumerated offenses listed in § 924(e)(2)(B)(ii). The only question then is whether Lerma's sentence can be sustained pursuant to the ACCA's force clause. That is, does the crime under the Texas aggravated robbery statute for which Lerma was previously convicted at least three times 'ha[ve] as an

-4-

element the use, attempted use, or threatened use of physical force against the person of another'?" (quoting Section 924(e)(2)(B)(i))).

II.   A Collateral Attack Under *Samuel Johnson*.

Relief under Section 2255 is limited to a claim "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *cf. Zalawadia v. Ashcroft*, 371 F.3d 292, 299 (5th Cir. 2004) ("[U]nlike direct review where the correctness of a court or agency order is comprehensively and directly before the court, a habeas court reviews the correctness of such an order only insofar as it relates to 'detention simpliciter.' In other words, habeas is not shorthand for direct review." (citations omitted)).

A *Samuel Johnson* claim under Section 2255, then, is necessarily that a movant's constitutional right to due process was violated – or that he was sentenced in excess of the maximum authorized by law (for example, that he received a minimum sentence of 15 years under Section 924(e), as opposed to a maximum sentence of 10 years under Section 924(a)(2)) – because he was sentenced under the ACCA's residual clause.

The Fifth Circuit, "join[ing] the majority of [its] sister circuits," has held that a court "must look to the law at the time of sentencing to determine whether a sentence was imposed" in violation of *Samuel Johnson* – that is, it was imposed under the ACCA's residual clause, as opposed to its enumerated offense clause or its force clause.

-5-

*United States v. Wiese*, 896 F.3d 720, 724 (5th Cir. 2018) (collecting cases).

And, generally speaking, a movant "has a burden of sustaining" a contention that he was sentenced in violation of *Samuel Johnson* – or any other contention in a Section 2255 motion – "by a preponderance of the evidence." *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)); *see also Coon v. United States*, 441 F.2d 279, 280 (5th Cir. 1971) ("A movant in a collateral attack upon a judgment has the burden to allege and prove facts which would entitle him to relief."); *United States v. Ellis*, Crim. No. 13-286, 2018 WL 1005886, at *2 (E.D. La. Feb. 21, 2018) ("Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence." (citing *Wright*, 624 F.2d at 558)).

The preponderance of the evidence standard – which, for example, also applies to the government's burden to prove sentencing enhancements, *see, e.g.*, *United States v. Myers*, 772 F.3d 213, 220 (5th Cir. 2014) (citations omitted) – requires "evidence by fifty-one percent, or to the extent of more likely than not," *United States v. Diaz*, 344 F. App'x 36, 43 (5th Cir. 2009) (per curiam) (citation, brackets, and internal quotation marks omitted); *see also Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 384 n.9 (N.D. Tex. 2016) ("Proving a fact by a 'preponderance of the evidence' means showing that the existence of a fact is more likely than not. Thus, to prove a fact or claim by a preponderance of the evidence, a party must prove that it is more likely than not that its version of the facts is true." (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983))).

-6-

So it would seem that, to establish a Section 2255 claim based on *Samuel Johnson*, a movant must show that it is more likely than not that the violent felony at issue qualified as a predicate conviction toward his ACCA sentencing enhancement under the now-invalidated residual clause. *See Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017) ("Only if the movant would not have been sentenced as an armed career criminal absent the existence of the residual clause is there a *[Samuel] Johnson* violation. That will be the case only (1) if the sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause (neither of which were called into question by *[Samuel] Johnson*) to qualify a prior conviction as a violent felony, and (2) if there were not at least three other prior convictions that could have qualified under either of those two clauses as a violent felony, or as a serious drug offense."); *see also United States v. Winterroth*, ___ F. App'x ____, No. 17-40554, 2019 WL 151332, at *2 (5th Cir. Jan. 9, 2019) (per curiam) (as applied to a successive motion, *Samuel Johnson* "struck down the residual clause of the ACCA's ... 'violent felony' definition as unconstitutionally vague. Thus, for *[Samuel] Johnson* to be relevant, Winterroth must show that the sentencing judge relied on the residual clause to sentence Winterroth. 'Merely a theoretical possibility' that the district court relied on the residual clause is insufficient." (citations omitted)).

But application of this seemingly straightforward proposition is complicated by the pre-*Samuel Johnson* sentencing landscape, in which district courts generally did not specify – and, indeed, had no duty to (and generally no reason to) specify – which

clause of the ACCA applied to which predicate violent felony. *See, e.g., Memoli v. United States*, Nos. 04cr140 (JSR) & 16cv4097 (JSR) (DF), 2017 WL 3559190 (S.D.N.Y. July 11, 2017) ("[B]efore *[Samuel] Johnson*, courts in the Second Circuit had no reason to develop an analysis of burglary as an enumerated offense under ACCA because the residual clause essentially functioned as a catchall for virtually any form of burglary."), *rec. adopted*, 2017 WL 3504918 (S.D.N.Y. Aug. 15, 2017); *cf. Massey v. United States*, 895 F.3d 248, 253 & n.10 (2d Cir. 2018) (after "hold[ing] that where it is clear from the record that a movant's sentence was enhanced pursuant to the ACCA's force clause, [his] § 2255 claim does not rely on *[Samuel Johnson]* for the purposes of 28 U.S.C. § 2255(h)," further observing that this holding is "consistent with" the "diligent analyses" provided by other circuits' decisions that "addressed whether a § 2255 movant's claim relies on *[Samuel Johnson]* when it was unclear from the sentencing record whether the movant was sentenced under the residual clause, the force clause, or the enumerated offense clause").

And, in the context of determining whether successive Section 2255 motions invoking *Samuel Johnson* were thereby based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," 28 U.S.C. § 2255(h)(2),the Fifth Circuit has surveyed the various approaches that other circuits have utilized to determine whether it was shown that a movant's claim truly was based on *Samuel Johnson. See generally United States v. Taylor*, 873 F.3d 476 (5th Cir. 2017); *Wiese*, 896 F.3d 720.

In *Taylor*, the Fifth Circuit first pointed to the Fourth Circuit's resolution of the

common problem of a sentencing record that does "not establish that the residual clause served as the basis for concluding that defendant's prior convictions ... qualified as violent felonies." *Taylor*, 873 F.3d at 480 (quoting *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017); brackets omitted). There, the Fourth Circuit

> declined to "penalize a movant for a court's discretionary choice not to specify under which clause of Section 924(e)(2)(B) an offense qualified as a violent felony." *Id.* The court explained that "nothing in the law requires a court to specify which clause it relied upon in imposing a sentence." *Id.* (quoting *In re Chance*, 831 F.3d 1335, 1340 (11th Cir. 2016)). The Fourth Circuit worried that "imposing the burden on movants urged by the government ... would result in 'selective application' of the new rule of constitutional law announced in [*Samuel Johnson*]." *Id.* That result would violate "'the principle of treating similarly situated defendants the same.'" *Id.* (quoting *Teague*, 489 U.S. at 304).

*Id.* (citation modified).

The Ninth Circuit has taken a similarly more lenient approach, *see id.* at 480 (discussing *United States v. Geozos*, 870 F.3d 890, 895-96 (9th Cir. 2017), under which, "when it is unclear whether a sentencing court relied on the residual clause in finding that a defendant qualified as an armed career criminal, but it may have, the defendant's § 2255 claim 'relies on' the constitutional rule announced in *[Samuel] Johnson*," *id.* (quoting *Geozos*, 870 F.3d at 896).

But the Tenth and Eleventh Circuits "have required movants to show something more." *Id.*

> The Tenth Circuit determined it is possible to tell whether a district court relied upon the residual clause when the sentencing record is unclear "by looking to the relevant background legal environment at the time of sentencing." *United States v. Snyder*, 871 F.3d 1122, 1129 (10th Cir. 2017) (quoting *Geozos*, 870 F.3d at 896). Courts take a "snapshot" of the law at the time of the sentencing and determine whether a defendant's

convictions "fell within the scope" of the other ACCA clauses. *Id.* If there "would have been no need for reliance on the residual clause," then the defendant fails to meet his burden.

*Id.* at 480-81 (citation modified). And, more recently,

> a panel of the Eleventh Circuit ruled, over dissent, that "[t]o prove a *[Samuel] Johnson* claim, the movant must show that – more likely than not – it was use of the residual clause that led to the sentencing court's enhancement of his sentence." *Beeman*, 871 F.3d at 1221-22. But the court acknowledged in a footnote that "if the law was clear at the time of sentencing that only the residual clause would authorize a finding that the prior conviction was a violent felony, that circumstance would strongly point to a sentencing per the residual clause." *Id.* at 1224 n.5. The court stressed that it is the state of the law at the time of the sentencing that matters, and subsequent legal decisions would "cast[ ] very little light, if any," on the question of whether the defendant was sentenced under the residual clause. *Id.*

*Id.* at 481 (citations modified); *cf. United States v. Castro*, 755 F. App'x 371, No. 17-40312, 2018 WL 6070373, at *2 (5th Cir. Nov. 20, 2018) (per curiam) (citing the Oxford English Dictionary to note that "[a] residual clause is just that – something that is 'left over' and considered after the primary question has first been reviewed" (citation omitted)).

Thus, as the Fifth Circuit later held in *Wiese* (again, in the context of a successive motion), while "[t]he dispositive question for jurisdictional purposes [ ] is whether the sentencing court relied on the residual clause in making its sentencing determination – if it did, then *[Samuel] Johnson* creates a jurisdictional predicate for the district court" – and while a court on Section 2255 review "must look to the law at the time of sentencing to determine whether a sentence was imposed under the enumerated offenses [or the elements] clause[s versus] the residual clause," "the

-10-

circuits are not in accord on how we decide whether the original sentencing court relied on the residual clause, and we previously have not established a standard to determine whether the sentencing court relied on the residual clause for *[Samuel] Johnson* purposes." *Wiese*, 896 F.3d at 724 (citations omitted).

As of the time of the Fifth Circuit's decision in *Wiese*, the Fourth and Ninth Circuits stood together in applying what may be distilled to a "may have" standard. *See id.* (citing *Winston* and *Geozos*); *see also United States v. Peppers*, 899 F.3d 211, 221 (3d Cir. 2018) ("In our view, § 2255(h) only requires a petitioner to show that his sentence may be unconstitutional in light of a new rule of constitutional law made retroactive by the Supreme Court," a standard that may be met "by demonstrating that he may have been sentenced under the residual clause of the ACCA, which was rendered unconstitutional by *[Samuel] Johnson*."). But the First and Sixth Circuits had joined the Tenth and Eleventh Circuits in applying a more exacting standard, which the Eleventh Circuit has classified as a "more likely than not" standard. *See Wiese*, 896 F.3d at 724 (citing *United States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018); *Potter v. United States*, 887 F.3d 785, 788 (6th Cir. 2018); *Dimott v. United States*, 881 F.3d 232, 243 (1st Cir. 2018); and *Beeman*); *see also Walker v. United States*, 900 F.3d 1012, 1015 (8th Cir. 2018) ("We agree with those circuits that require a movant to show by a preponderance of the evidence that the residual clause led the sentencing court to apply the ACCA enhancement. Under the longstanding law of this circuit, a movant bears the burden of showing that he is entitled to relief under § 2255. The mere possibility that the sentencing court relied on the residual clause is insufficient to

-11-

satisfy this burden and meet the strict requirements for a successive motion." (citations omitted)).

The Fifth Circuit has so far refused to commit to any standard. *But see Wiese*, 896 F.3d at 724 (noting "that the 'more likely than not' standard appears to be the more appropriate standard since it comports with the general civil standard for review and with the stringent and limited approach of AEDPA to successive habeas applications").

The Court of Appeals instead held that "Taylor's § 2255 claim merits relief under all of them." *Taylor*, 873 F.3d at 481. Under the "may have" standard, a post-*Samuel Johnson* Fifth Circuit decision held that the un-enumerated, state violent felony "necessary to sustain Taylor's sentence enhancement" is broader than the ACCA's elements clause. *Id.* at 482. "Thus, Taylor's claim would merit relief in both the Fourth and Ninth Circuits." *Id.* As to the more exacting approaches,

> [a]t the time of Taylor's sentencing, [the Fifth Circuit] had not ruled directly on the question of whether Texas's injury-to-a-child offense is broader than the ACCA's elements clause. But here, unlike the cases from the Tenth and Eleventh Circuits, there was precedent suggesting that Taylor's third predicate conviction could have applied only under the residual clause. *See United States v. Gracia-Cantu*, 302 F.3d 308, 311-13 (5th Cir. 2002). Thus, even using the Tenth Circuit's "snapshot" inquiry or the Eleventh Circuit's "more likely than not" test, Taylor would prevail. Theoretically, the district court mistakenly could have been thinking of the elements clause when sentencing Taylor. But this court will not hold a defendant responsible for what may or may not have crossed a judge's mind during sentencing.

*Id.* at 482.

On the other hand, the Fifth Circuit ruled that Wiese failed to show that his

claim – which turned on Texas burglary, *see* TEX. PENAL CODE § 30.02(a), as the crime necessary to sustain his ACCA enhancement, burglary being an enumerated offense in that statute – was based on *Samuel Johnson* (the "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2255(h)(2)) under the more lenient "may have" standard, *Wiese*, 896 F.3d at 724-25. In so doing, the Court of Appeals noted that, "[i]n determining potential reliance on the residual clause by the sentencing court," a reviewing court "may look to (1) the sentencing record for direct evidence of a sentence, and (2) the relevant background legal environment that existed at the time of the defendant's sentencing and the presentence report ("PSR") and other relevant materials before the district court." *Id*. at 725 (citations, internal quotation marks, and brackets omitted).

As to Wiese,

although the sentencing judge did not make any statement as to which clause was used for the sentencing enhancement, it is not "more likely than not" that the residual clause came into play. As well, there is nothing to indicate that the sentencing judge "may have" relied on the residual clause.

In 2003, when Wiese was convicted of being a felon in possession, all of § 30.02(a) was considered generic burglary under the enumerated offenses clause of ACCA. *See United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992); *see also United States v. Stone*, 72 F. App'x 149, 150 (5th Cir. 2003) (per curiam) (citing *Silva*, 957 F.2d at 161-62). That we held five years later that § 30.02(a)(3) is not generic burglary, *United States v. Constante*, 544 F.3d 584, 587 (5th Cir. 2008) (per curiam), or that we held earlier this year that § 30.02(a) is indivisible, *[United States v. Herrold*, 883 F.3d 517, 529 (5th Cir. 2018) (en banc)], is of no consequence to determining the mindset of a sentencing judge in 2003. Indeed, *Herrold*'s state law analysis that undergirded the divisibility determination was largely based upon a Texas Court of Appeals case

decided five years after the sentencing in this case. *See Herrold*, 883 F.3d at 523, 525 (citing *Martinez v. State*, 269 S.W.3d 777 (Tex. App. – Austin 2008, no pet.)). Thus, at the time of sentencing, there was absolutely nothing to put the residual clause on the sentencing court's radar in this case.

What is more, the PSR and other documents before the sentencing court clearly indicate that the sentencing judge would have relied on the enumerated offenses clause in sentencing Wiese.

*Id.* at 725 (footnote omitted).[1]

That the Fifth Circuit first addressed these standards in the context of determining whether there is jurisdiction over successive Section 2255 motions raising *Samuel Johnson* claims makes some sense, because "[a] second or successive habeas application must meet strict procedural requirements before a district court can properly reach the merits of the application." *Wiese*, 896 F.3d at 723 (citing 28 U.S.C. §§ 2244(b) & 2255(h); *Reyes-Requena v. United States*, 243 F.3d 893, 896-900 (5th Cir.

---

[1] *See also Castro*, 2018 WL 6070373, at *2 (refusing to distinguish *Wiese* based on its reliance on conviction documents before the sentencing court "showing he was convicted under subsection (a)(1) of the Texas burglary offense" and explaining that "we do not see why that requires a different result given that in 2000 any conviction for Texas burglary of a habitation qualified as generic burglary. There was no need to resort to the modified categorical approach, which is the point of considering state conviction records, to reach that conclusion." (citation omitted)); *United States v. White*, Crim. No. 04-20076 (01), 2019 WL 898572, at *4 (W.D. La. Feb. 21, 2019) ("Because it is the Petitioner's burden to demonstrate that the sentencing court 'may have' relied on the residual clause, the Court must find that the burden has not been met. White has offered no evidence to suggest that the sentencing court relied upon or even considered the residual clause. The legal environment existing in 2005[, when his federal sentence was enhanced under the ACCA based in part on his Louisiana conviction for aggravated battery with a deadly weapon,] includes persuasive Fifth Circuit [authority to support that this state conviction would have been imposed under the ACCA's elements clause]. Moreover, if considered today, [recent Fifth Circuit authority] suggests that White's conviction would be considered under the elements clause.").

2001)). And that Section 2255(h)(2)'s requires "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" squarely focuses a court on *Samuel Johnson*'s applicability.

But, in *United States v. Craven*, 755 F. App'x 388, No. 17-60210, 2018 WL 6264381 (5th Cir. Nov. 29, 2018) (per curiam), a panel of the Fifth Circuit applied these standards to determine whether an initial Section 2255 motion was timely under 28 U.S.C. § 2255(f)(3) "because it was filed within a year of the Supreme Court deciding *[Samuel] Johnson*." *Id.* at 2. And, according to the *Craven* panel, "[t]he threshold question to determine the timeliness of Craven's motion is whether he asserted a *[Samuel] Johnson* claim, i.e., whether he claimed that he was sentenced under the ACCA's residual clause." *Id.*; *see also id.* at 3 (concluding that, because "[t]he PSR based its violent felony determinations for the possession of a short-barreled shotgun and car theft convictions on Eighth Circuit cases finding those crimes to be violent felonies under the ACCA's residual clause and an analogous sentencing guidelines provision," "it is more likely than not that the district court relied on the residual clause for at least two of the four convictions used to enhance Craven's sentence. At least one of these convictions was necessary to sustain the enhancement. Craven asserted a *[Samuel] Johnson* claim, and it is more likely than not that he was sentenced under the residual clause. The district court erred in dismissing Craven's § 2255 motion as time-barred." (citations omitted)).

And the Fifth Circuit panels in *Taylor* and *Wiese* considered precedent from other circuits applying these standards to initial motions. *See, e.g., Snyder*, 871 F.3d

1122; *Beeman*, 871 F.3d 1215; *Dimott*, 881 F.3d 232; *United States v. Wilson*, 249 F. Supp. 3d 305, 310 n.8 (D.D.C. 2017) ("Defendant had not previously filed a § 2255 motion in this case, so he did not need to seek leave to file from the Court of Appeals. *See* 28 U.S.C. § 2255(h).").

And some circuits have already explicitly expanded application of – in their view, the correct option among – these standards to an initial Section 2255 motion. *See United States v. Driscoll*, 892 F.3d 1127, 1135 (10th Cir. 2018) ("In *United States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018), we adopted *Beeman*'s articulation of a § 2255 movant's burden in a slightly different context. We now further adopt *Beeman*'s 'more likely than not' burden of proof here, at the merits stage of a first § 2255 challenge. Consequently, Driscoll must prove that the sentencing court, more likely than not, relied on the residual clause to enhance his sentence under the ACCA. Driscoll meets this burden. The sentencing record is ambiguous as to whether the sentencing court relied on the residual clause to enhance Driscoll's sentence, which favors neither Driscoll nor the government. But, after a review of the relevant background legal environment, we conclude that the sentencing court must have relied on the residual clause, as any reliance on the enumerated offenses clause would have violated *Taylor[ v. United States*, 495 U.S. 575 (1990)]. Thus, Driscoll has adequately shown it is more likely than not that the sentencing court relied on the residual clause to enhance his sentence." (footnote omitted)); *Garcia-Hernandez v. United States*, 915 F.3d 558, 560 (8th Cir. 2019) ("*Walker*'s principles govern here, at the merits stage of an initial 2255 motion. Garcia-Hernandez must 'show by a preponderance of the

-16-

evidence that the residual clause led the sentencing court to apply the ACCA enhancement.'" (quoting *Walker*, 900 F.3d at 1015)); *see also In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016) (per curiam) ("We grant this application because it is unclear whether the district court relied on the residual clause or other ACCA clauses in sentencing Moore, so Moore met his burden of making out a *prima facie* case that he is entitled to file a successive § 2255 motion raising his *[Samuel] Johnson* claim. There in the district court though, a movant has the burden of showing that he is entitled to relief in a § 2255 motion – not just a *prima facie* showing that he meets the requirements of § 2255(h)(2), but a showing of actual entitlement to relief on his *[Samuel] Johnson* claim." (collecting cases)).

Regardless which standard the Court should apply – for example, "may have" or "more likely than not" – and regardless whether the Court is addressing its jurisdiction to consider the merits of a successive motion, an affirmative defense to a motion (such as limitations under 28 U.S.C. § 2255(f)), or the merits of the motion – at the outset, the Court must determine whether the right recognized in *Samuel Johnson* truly is at issue – that is, whether the violent felony at issue qualified as a predicate conviction toward the movant's ACCA sentencing enhancement under the now-invalidated residual clause.

And, while – as to a successive motion – the district court's Section 2255(h)(2) gatekeeping function often merges with its determining whether a *Samuel Johnson* claim exists, *see, e.g.*, *Perez v. United States*, 730 F. App'x 804, 810 (11th Cir. 2018) (per curiam), a true *Samuel Johnson* claim itself does not necessarily entitle its movant to

relief. Instead, that sentencing error, on collateral review, only entitles a movant to relief if the error "'had substantial and injurious effect or influence in determining' [the movant's] sentence." *Driscoll*, 892 F.3d at 1132 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)); *see, e.g., id.* ("First, we determine whether the sentencing court erred by relying on the residual clause to enhance Driscoll's sentence. Second, if the sentencing court erred, we determine whether that error 'had substantial and injurious effect or influence in determining' Driscoll's sentence." (citation omitted); *Hrobowski v. United States*, 904 F.3d 566, 569 (7th Cir. 2018) ("[A] prisoner who was sentenced under the unconstitutional residual clause can move to vacate his sentence, as long as the error affected his sentence." (citation omitted)); *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a Section 2255 proceeding).

Under *Brecht*, "certain 'structural' errors," *Ellis*, 2018 WL 1005886, at *2 (quoting *Brecht*, 507 U.S. at 629-30) – defined as "defects in the constitution of the trial mechanism," such as "deprivation of the right to counsel," *Brecht*, at 629 – entitle a movant to automatic relief "once the error is proved. For other 'trial' errors, the court may grant relief only if the error 'had substantial and injurious effect or influence' in determining the outcome of the case." *Ellis*, 2018 WL 1005886, at *2 (citing *Brecht*, 507 U.S. at 629-30; then quoting *id.* at 637-38). So, even if there is true *Samuel Johnson* sentencing error, if a movant "has three predicate convictions to support his enhanced sentence as an armed career criminal under the ACCA," he is not entitled to relief. *Driscoll*, 892 F.3d at 1135-36; *see also Chavez*, 193 F.3d at 379 ("Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they

-18-

are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.").

At this stage, the Court may consider the impact of applicable statutory-interpretation decisions handed down after a movant's sentencing, such as *Mathis v. United States*, 136 S. Ct. 2243 (2016). *See, e.g.*, *United States v. Lewis*, 904 F.3d 867, 873 (10th Cir. 2018) ("*Mathis* and other current, post-sentence cases are only applicable at the harmless error stage of review, once the movant has established the existence of *[Samuel] Johnson* error."); *accord Driscoll*, 892 F.3d at 1136-37; *see also Van Cannon v. United States*, 890 F.3d 656, 661-62 (7th Cir. 2018) (where "[t]he government confessed the *[Samuel] Johnson* error," "[t]he only remaining dispute concerned the question of prejudice," and during that dispute, a movant is "entitled to show that under current caselaw, one or more of [his] remaining predicates could not be counted" (citation omitted)); *but see Peppers*, 899 F.3d at 230, 236 (holding "that, once a defendant has satisfied § 2255(h)'s gatekeeping requirements by relying on *[Samuel] Johnson*, he may use post-sentencing cases such as *Mathis*, *Descamps[ v. United States*, 570 U.S. 254 (2013)], and *[Curtis Johnson]* to support his *[Samuel] Johnson* claim because they are Supreme Court cases that ensure we correctly apply the ACCA's provisions," but then remanding to the district court to resolve whether the error was harmless under *Brecht*).

## Analysis

In authorizing the filing of this successive Section 2255 motion, the Fifth Circuit panel observed that its "grant of authorization is tentative in that the district court

must dismiss the § 2255 motion without reaching the merits if it determines that Edmonds has failed to make the showing required by § 2255(h)(2)." Dkt. No. 1 at 2 (citing 28 U.S.C. § 2244(b)(4); *Reyes-Requena*, 243 F.3d at 899); *see also* 28 U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."); *cf. In re Swearingen*, 556 F.3d 344, 347 (5th Cir. 2009) (per curiam) ("We reiterate that this grant is tentative in that the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits, if the court finds that the movant has not satisfied the § 2244(b)(2) requirements for the filing of such a motion." (citations omitted)); *Jordan v. Sec'y, Dep't of Corrs.*, 485 F.3d 1351, 1358 (11th Cir. 2007) (stating that it makes "no sense for the district court to treat [a court of appeals's] *prima facie* decision as something more than it is or to mine [the circuit court's] order for factual ore to be assayed" and directing that "[t]he district court is to decide the § 2244(b)(1) & (2) issues fresh, or in the legal vernacular, *de novo*" (citations omitted)).

The tentative authorization to file Edmonds's successive motion was based on his contention "that his enhanced sentence under the ACCA appears to be based upon *[Samuel] Johnson* error because his prior New York convictions for burglary in the second degree could only be violent felonies under the residual clause." Dkt. No. 1 at 2. Relatedly, the presentence report ("PSR") [Crim. Case, Dkt. No. 227] – which the Court "adopted ... as [its] findings for the purpose of [the] sentencing hearing," Crim. Case, Dkt. No. 232 at 14:24-25 – provided that Edmonds "committed nine (9) separate

-20-

burglaries in the City of Poughkeepsie, New York," to which Edmonds pleaded guilty on December 20, 1985. Crim. Case, Dkt. No. 227, ¶ 23; *see also id.* at 15 (addendum to the PSR, noting that "[t]he probation office agrees with the Government's Response to [Edmonds's] objection [as to the prior burglary convictions] in that the defendant's past Burglary of a Habitation convictions in New York are crimes of violence and qualify the defendant as an armed career criminal").

And documents that Edmonds filed in the Fifth Circuit to obtain preliminary authorization include the transcripts of the December 20, 1985 plea proceeding and the January 16, 1986 sentencing related to these convictions. *See* Dkt. No. 1-2 at 1-59. These transcripts reflect that Edmonds entered "nine guilty pleas to burglary in the second degree, nine Class C violent felonies, in violation of Section 140.25 of the Penal Law of the State of New York." *Id.* at 3-4.

This statute then and now provides that

[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when:
 1. In effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
     (a) Is armed with explosives or a deadly weapon; or
     (b) Causes physical injury to any person who is not a participant in the crime; or
     (c) Uses or threatens the immediate use of a dangerous instrument; or
     (d) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or
 2. The building is a dwelling.

N.Y. PENAL LAW § 140.25. As applicable to arguments made by the parties here, the statute defines "building" as,

in addition to its ordinary meaning, includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer. Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building.

*Id.* § 140.00(2). And the statute defines "dwelling" as "a building which is usually occupied by a person lodging therein at night." *Id.* § 140.00(3).

Edmonds's New York burglary convictions preceded the seminal decision defining burglary as that term is used in the ACCA's enumerated offense clause – "the elements of generic 'burglary' [are] 'an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.'" *United States v. Stitt*, 139 S. Ct. 399, 405-06 (2018) (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

And the Supreme Court recently affirmed that a state burglary statute's "coverage of vehicles designed or adapted for overnight use" does not take that "statute outside the generic burglary definition." *Stitt*, 139 S. Ct. at 407; *see also id.* at 405 (noting its holding in *Taylor* that a "uniform definition" for burglary under the ACCA "includes 'at least the "classic" common-law definition,' namely, breaking and entering a dwelling at night with intent to commit a felony," but that definition, "by excluding all places other than dwellings ... has 'little relevance to modern law enforcement concerns.' Perhaps for that reason, by the time the [ACCA] was passed in 1986, most States had expanded the meaning of burglary to include 'structures other than dwellings.'" (citations omitted)); *id.* at 406 ("[W]e made clear in *Taylor* that Congress

-22-

intended the definition of 'burglary' to reflect 'the generic sense in which the term was used in the criminal codes of most States' at the time the [ACCA] was passed. In 1986, a majority of state burglary statutes covered vehicles adapted or customarily used for lodging – either explicitly or by defining 'building' or 'structure' to include those vehicles." (citations and original brackets omitted)); *cf. United States v. Herrold*, 883 F.3d 517, 533-34 (5th Cir. 2018) (en banc) (as to the "remaining in" language applicable to burglary, first observing that "the *Taylor* Court noted that its 'generic sense' of the offense would have been recognized as burglary by most states at the time *Taylor* was decided" and then "lift[ing] up" – as a "particularly influential" example of the proper scope of that language – New York's burglary statute and the decisions interpreting it).

*Stitt*'s affirmation of *Taylor* as to locational scope appears to foreclose Edmonds's argument that – by including certain vehicles and watercrafts – the New York statute's definition of "building" (also incorporated into its definition of "dwelling") makes that statute non-generic. *See* Dkt. No. 43 at 9-12. That argument also was the basis for another district court's determination that a New York conviction for burglary in the second degree does not qualify as a violent felony under the ACCA's enumerated offenses clause. *See Memoli*, 2017 WL 3559190, at *9 ("Based on a *Taylor/Descamps/Mathis* analysis, Petitioner's 1993 [New York conviction for burglary in the second degree] was for a crime with a locational element that was broader than the comparable element of generic burglary, and thus it could only have served as an ACCA predicate under ACCA's residual clause, which has now been

invalidated by *[Samuel] Johnson*. This means that, as long as it is appropriate for this Court to engage in the enumerated-offenses analysis at this juncture, Petitioner would be entitled to habeas relief on his Section 2255 motion. Absent his 1993 conviction, Petitioner would no longer even conceivably have the three predicate violent felonies required to support his ACCA sentence, and he would be entitled to resentencing.").[2]

In *Stitt*, the Supreme Court also noted that, as it said in *Taylor*, "Congress ... viewed burglary as an inherently dangerous crime because burglary 'creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.'" *Stitt*, 139 S. Ct. at 406 (quoting *Taylor*, 495 U.S. at 588).

More than 3 years after *Taylor* – but still some 7 years before Edmonds received his ACCA-enhanced sentence – the United States Court of Appeals for the Second Circuit found that "attempted burglary in the third degree under New York law" qualified as a violent felony under the ACCA. *United States v. Andrello*, 9 F.3d 247, 250 (2d Cir. 1993). Notably, before reaching that conclusion, the Second Circuit observed

_____

[2] *See also Winarske v. United States*, 913 F.3d 765, 768 & n.3 (8th Cir. 2019) (first questioning whether *Stitt* "put in doubt" a previous Eighth Circuit decision finding the North Dakota burglary statute to be non-generic based on its inclusion of vehicles but, regardless, "declin[ing] to consider the merits of this enumerated-offenses-clause issue for three reasons" – at least two of which are also applicable here – "[f]irst, the new rule in *[Samuel] Johnson* has no nexus to [a] claim" that turns on the ACCA's enumerated offense clause and, "[s]econd, neither *Mathis* nor *Descamps* announced 'a new rule of law, made retroactive to cases on collateral review by the Supreme Court,' as § 2255(h)(2) and § 2244(b)(2)(A) require. Rather, 'these decisions are simply the Supreme Court's latest interpretations of the categorical approach the Court has long applied in deciding whether a prior conviction is an ACCA violent felony.'" (citations omitted)).

that "[b]urglary, for purposes of a § 924(e) enhancement, means any crime that includes the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime" and "was made a basis for enhanced punishment for the weapons offenses covered by § 922(g) because it inherently involves risk of injury to persons who may be in or may enter the targeted building during the burglary." *Id.* at 249 (citing *Taylor*, 495 U.S. at 600, 585, 588).

Against this legal landscape, in place when the Court imposed Edmonds's sentence as enhanced under the ACCA – and considering that the Court then had the benefit of a PSR and PSR addendum reflecting that Edmonds's prior convictions were for burglaries of habitations – Edmonds has not shown, at a minimum, "that the sentencing court 'may have' relied on the residual clause," *Wiese*, 896 F.3d at 725, 724; *see also Castro*, 2018 WL 6070373, at *2-*3; *White*, 2019 WL 898572, at *4, by showing that his New York burglary convictions fell outside *Taylor*'s definition of generic burglary.

Edmonds has therefore not shown that any *Samuel Johnson* sentencing error has resulted in prejudice by showing that there are no longer three predicate violent felonies under either the ACCA's enumerated offenses clause or its elements clause to sustain his ACCA sentencing enhancement.

## Recommendation

The Court should dismiss the successive Section 2255 motion under 28 U.S.C. § 2244(b)(4).

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 4, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE